# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | **COMPLAINT FOR** |
| | ) | **FORFEITURE *IN REM*** |
| v. | ) | |
| | ) | CIVIL ACTION NO: 3:18cv523 |
| Approximately $22,960 in funds seized | ) | |
| from Alejandro Mena at the | ) | |
| Charlotte-Douglas International Airport. | ) | |

Now comes the United States of America, Plaintiff herein, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

## INTRODUCTION

1. This is a civil action *in rem* against U.S. currency and pursuant to the provisions of 21 U.S.C. § 881 and 18 U.S.C. § 981(a)(1)(A).

2. This action seeks the forfeiture of all right, title, and interest in the above-captioned property because the property is proceeds traceable to offenses constituting specified unlawful activity as defined by the money laundering statute under 18 U.S.C. § 1956(c)(7) and/or currency used in a transaction or an attempted transaction in violation of 18 U.S.C. § 1960.

3. Moreover, upon information and belief which, upon information and belief, this currency was used to transport or to facilitate the transportation, sale, receipt,

1

possession or concealment of controlled substances, in violation of 21 U.S.C. § 841, is subject to forfeiture to the United States. 21 U.S.C. § 881(a)(4).

4. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621 and, to the extent applicable, the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.

5. This Court has venue in this matter pursuant to 28 U.S.C. § 1395.

6. The defendant property has been seized on land, is now within, and during the pendency of this action will remain within the Western District of North Carolina.

7. The Defendant is all present and future interest in the following property:

   a. approximately $22,960 seized from the checked Alejandro Mena at the Charlotte-Douglas International Airport.

## FACTUAL BACKGROUND

8. On February 28, 2018, Pineville Police Department (PPD), Charlotte-Mecklenburg Police Department (CMPD), and Homeland Security Investigations were conducting a pre-screening interdiction operation at the Charlotte-Douglas International Airport at Concourse C Gate C12.

9. During the course of the investigation, Special Agent William Bass and Mark Hammond and CMPD Officer (TFO) Brown, CMPD Officer Hostutler and his drug canine "Owen," and PPD Officer (TFO) Bradshaw and his drug canine "Yona" were asked to respond to Gate C12 to conduct consensual interviews with passengers.

10. While Agents Bass and Hammond were conducting these interviews, TFO Hostutler and Bradshaw were conducting open air sniffs of passengers' checked suitcases.

11. While moving through the terminal, TFO Bradshaw's canine, Yona, alerted to the presence of narcotics in the suitcase of passenger Alejandro Mena.

2

12. Agents Bass and Hammond then attempted to locate Mena in the gate area of C12 to request his consent to search his suitcase.

13. TFO Brown met SA Bass and SA Hammond at Gate C12 with Mena's suitcase.

14. SA Bass and TFO Brown approached Mena and identified themselves as law enforcement Officers before asking if they could speak with him.

15. SA Bass informed Mena that a drug canine had alerted to the presence of narcotics in his checked suitcase.

16. SA Bass asked for consent to search Mena's checked suitcase and consent was granted.

17. SA Bass asked for Mena's identification and he presented a California identification card with a home address in Montebello, CA 90640.

18. SA Bass asked Mena if they could walk towards an adjacent gate away from the other passengers and he consented.

19. While TFO Brown was searching the checked suitcase, SA Bass asked Mena for consent to search his carry-on bag.

20. Mena handed his back pack to SA Bass who then handed it to TFO Brown.

21. TFO Brown placed the back pack on the ground.

22. CMPD Officer Hostutler directed drug canine Owen to conduct an open air sniff on the carry-on back pack.

23. Owen immediately showed a positive alert to the presence of narcotics.

24. SA Bass informed Mena that a canine alerted to the presence of narcotics in his carry-on back pack.

25. As TFO Brown continued searching Mena's checked suitcase and carry-on back pack, SA Brown began questioning Mena about his travel itinerary.

26. When asked where he was travelling from into Charlotte, Mena responded Charleston, West Virginia.

27. When asked when he purchased his ticket, Mena responded late Monday evening, two days prior to the encounter with Officers on Wednesday, February 28, 2018.

28. When asked if he had a hotel reservation, Mena responded that he planned to find a hotel once he arrived.

29. When asked about the purpose of his trip, Mena stated that he bought and sold classic vehicles and was looking for one in the Charleston, West Virginia area.

30. Mena further stated that he had been buying and selling vehicles for about 3-4 years with a cousin.

31. Mena stated that although they did not have a dealer's license when they located a vehicle in the United States he would travel by plane to the location to check out the vehicle.

32. Mena stated that once he chose a vehicle he would purchase it and drive back to California to resale.

33. Mena stated that he and his cousin purchased four classical vehicles in the last year.

34. When asked, Mena could not provide the name of the person that he met in West Virginia.

35. When asked if he had contact information for the owner of the vehicle in West Virginia, Mena stated that he did not.

36. When asked how much currency he was carrying, Mena responded between $25,000 and $30,000.

37. When asked about his employment, Mena stated that he was a sales representative at Verizon and had previously been employed as a sales representative at AT&T.

38. When asked about his salary, Mena responded that he made about $8,000 to $10,000 annually.

39. When pressed further about his intention to buy a classic car in West Virginia he stated that he had been communicating with the seller via Snapchat—but could not provide the Agents the contact's Snapchat information.

40. When asked to provide information for his cousin and business partner, Mena provided a number that stated the "subscriber was not accepting incoming calls."

4

41. The agents dialed the number at least four times and each time received the same message.

42. Mena told the Officers that the cash he was transporting belonged to him and had not been withdrawn from any bank.

43. Mena stated that he had saved the money because he did not trust banks and, further, that nearly all the money was his and not his cousins.

44. He further stated that any tax liabilities coming from the currency was paid previously by his cousin.

45. Based on the totality of the circumstances, SA Bass advised Mena that he would be seizing the currency due to, among other things, the positive drug canine alert and the inconsistencies in his story as to the origin of the currency.

46. After being informed that the currency would be seized, Mena stated that he smokes marijuana because it is legal in California.

47. SA Bass provided then Mena with a DHS/CBP Form 6051 property receipt for the currency.

48. SA Bass informed Mena that he was not under arrest and could leave the scene at anytime.

49. SA Bass asked if Mena would be willing to come to the Airport Law Enforcement Office to discuss the origin of the currency, Mena declined.

50. Mena then asked the Officers to take photographs of the currency as it was being seized.

51. When asked why this was necessary if the currency was his, Mena stated that his cousin would need to know it was taken by law enforcement.

52. When pressed, Mena insisted that his cousin needed to know who took the currency.

53. SA Hammond and SA Bass packaged and sealed the currency into evidence bags.

54. On February 28, 2018, SA Bass and PPD TFO Bradshaw transported the currency to Loomis where employees determined the currency amount was $22,960.

55. The funds were deposited into a US Customs and Border Protection account for further adjudication.

56. Upon further investigation, HSI could not confirm Mena's alleged travel to West Virginia.

57. Instead, the investigation revealed that Mena had flown to Charlotte on a one-way ticket on February 26, 2018 and a third party purchased a one way ticket on February 27, 2018 departing to Los Angeles on February 28, 2018.

## PRAYER FOR RELIEF

1. By virtue of the foregoing, all right, title, and interest in the defendant property vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture, pursuant to the provisions of 21 U.S.C. § 881 and 18 U.S.C. § 981(a)(1)(A), has become and is forfeitable to the United States of America.

2. Upon information and belief, the following persons may have or claim an interest in the defendant property:

> Alejandro Mena
> 237 N Maple Place
> Montebello, CA 90640
>
> Alejandro Mena
> c/o the Lentz Firm P.C.
> 1200 Wilshire Blvd
> Suite 406
> Los Angeles, CA 90017

WHEREFORE, the United States of America respectfully prays the Court that:

(1) a warrant for the arrest of the defendant be issued;

(2) due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3) judgment be entered declaring the defendant to be condemned and forfeited to the United States of America for disposition according to law; and

(4) the United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of defendant property as required by 28 U.S.C. § 1921.

Respectfully submitted, this the 27th day of September, 2018.

        R. ANDREW MURRAY
        UNITED STATES ATTORNEY

        /s Tiffany Mallory Moore
        Assistant United States Attorney
        United States Attorney's Office for the
        Western District of North Carolina
        GASB #744522
        227 West Trade Street, Suite 1650
        Charlotte, North Carolina 28202

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

## VERIFICATION

William V. Bass II deposes and says under penalty of perjury;

I am a Special Agent with Department of Homeland Security, Homeland Security Investigations and one of the agents assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

_____
SA William V. Bass II

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

I certify that William V. Bass II personally appeared before me this day, acknowledging to me that he signed the foregoing document.

This the 27 day of September, 2018.

_____
Notary Public
My Commission Expires: 11/19/2018

Lauren Amanda Fowler Hefferon
NOTARY PUBLIC
Cabarrus County, North Carolina